Shiras, District Judge.
In November, 1879, Boger S. Munger and Charles S. Weaver, partners under the firm name of C. S. Weaver & Co., were engaged in the business of repairing steamboats, at Bismarck, Dak. ' On the 17th of November, 1879, they entered into a written contract with the owners of the steamer Butte, whereby they agreed to haul the steamer out of the Missouri river upon the marine ways operated by them, and to replace the boat in the river in the following spring. At the same time they made an oral agreement of the same tenor with the owners of the steamer McLeod. In carrying out these contracts, the steamer Butte was hauled upon the ways by C. S. Weaver & Co., and the McLeod was placed at the foot of the ways, preparatory to being hauled thereon. Through the alleged negligence of C. S. Weaver & Co. in not properly blocking the Butte upon the ways, this steainer slid back into the river, and, coming into collision with the McLeod, injured that vessel to such an extent that it sank, and became a total loss. The owners of the McLeod thereupon filed in the United States district court for Minnesota a libel in admiralty[1] against the owners of the steamer Butte to recover the damages caused them by the destruction of the McLeod, and upon appeal to the United States circuit court, on the 15th of October, 1883, a decree'and judgment in favor of libel-ants was entered, awarding' them one half the damages, being the sum of $9,572.82. Of the pendency of these proceedings due notice was given to C. S. Weaver & Co. by the owners of the Butte, with the request that they disprove the charge of negligence in the handling of the Butte when placed upon the ways as above stated. Upon appeal to the supreme court of the United States, the decree awarding damages against the owners of the Butte was affirmed (127 U, S. 789)[2] on the 1st day of June, 1888, and on the 29th day of that month, Thomas C. Power, one of the owners of said steamer Butte, and a respondent in the proceedings in admiralty, was compelled to pay, and did pay, upon said judgment therein, the sum of $8,574.74. On the 8th of January, 1892, he brought the present action at law in the United States circuit court for the district of Minnesota against Boger S. Munger and Charles S. Weaver to recover the damages thus caused him, service of notice being had upon Munger only. Among other defenses, it was pleaded by said Munger that the cause of action did not accrue after November 17, 1879; that more than 10 years had elapsed, during all of which time said defendant had resided in the state of Minnesota, and therefore the action was barred under the provisions of the statute of the state of Minnesota. The case was heard before the court and jury, and after the close of the testimony the court directed the jury to re *707 turn a verdict for the defendant, on the ground that the action was barred by the statute of limitations. Judgment for the defendant having been entered upon the verdict rendered in obedience to the instructions of the court, the plaintiff, Thomas C. Power, brings the case to this court upon writ of error, the sole question at issue being that presented by the ruling made in the court below upon the plea of the statute of limitations.
This ruling of the trial court was based upon the assumption that the suit was for a breach of the written contract between C. S. Weaver & Co. and the owners of the steamer Butte; that the contract created an implied obligation on part of Weaver & Co. to properly handle the Butte; that the injury to the McLeod resulted from a breach of this implied obligation; that a cause of action for breach of this implied obligation arose in favor of the owner of the Butte at the time of the injury to the McLeod, and therefore the period of limitation must be dated from that time.
In the petition herein filed the facts already stated are set forth in their proper order, and, as we construe the petition, it does not declare upon a breach of the contract between Weaver & Co. and the owners of the Butte, but it sets forth all the facts, and bases the right of recovery thereon. Thus it is therein stated that the plaintiff was compelled to pay a given sum of money by reason of a judgment rendered against him and others, as the owners of the steamer Butte, as compensation for one half the damages caused to the owners of the steamer McLeod by a collision occurring between the two steamers, it being further expressly averred “that the collision and damage aforesaid occurred solely by reason of the carelessness, negligence, and unskillfulness of the defendants in propping up said steamboat Butte, and placing said steamboat McLeod at the foot of the said marine ways while the steamboat Butte was so improperly stayed;” thus charging negligence against Weaver & Co. in the handling of the McLeod as well as of the Butte.
The fact of the execution of the written contract between C. S. Weaver & Co. and the owners of the Butte, and the general tenor of this contract, as well as of the oral contract with the owners of the McLeod, are set forth in the petition, but it is not averred that by the terms thereof C. S. Weaver & Co. had bound themselves to the owners of the Butte not to cause injury to the McLeod. The contract does declare the character of the liability assumed by Weaver & Co. touching the Butte, and, if this action was to recover for damages caused to the Butte, then this contract would be the measure of the parties’ rights, and would be the basis of the action. The suit, however, is not to recover for injuries caused to the property of the owners of the Butte through the failure of C. S. Weaver & Co. to properly perform their contract obligations, nor is it for the protection or maintenance of any personal or property right of the plaintiff, but, in effect, is based upon the allegations that, through the negligence of Weaver & Co. in handling the steamer Butte when intrusted to their care, injury was caused to the McLeod; that for the damages to the McLeod a judgment was obtained in the admiralty proceedings *708 against the plaintiff and other owners of the Butte, which the plaintiff was compelled to pay. The recital of the contracts in the' declaration is in accord with the code system of pleading in force in Minnesota, under which it is the practice to set forth in some detail the facts constituting the history of the given case. The allegations in the declaration are entirely consistent with the view that the plaintiff bases the action on the charge of negligence. The setting forth the two contracts under which C. S. Weaver & Co. had charge of the steamers is matter of inducement, and the question at issue is not other nor different from what it would have been had it been simply stated that C. S. Weaver & Co. had possession of and control over the steamers at the time of the accident. In other words, the question when the statute of limitations began to run is not dependent upon the mere form of the petition, but arises upon the entire facts that were presented at the close of the evidence, and at the time when the trial court ruled that the statute was a bar to the suit. If, under the facts then in evidence, it appeared that the plaintiff could not recover except upon proof of the execution of the written contract between C. S. Weaver & Co. and the owners of the Butte, and a breach of its terms, then it might well be that the statute began to run at the date of a breach; but, in fact, plaintiff’s right of action is not based upon a breach of this contract. It is based upon the allegations that Weaver & Co., having in their possession and control the steamer Butte, so negligently handled the same as to cause injury to the steamer McLeod; and that the plaintiff, as one of the owners of the Butte, has been compelled to pay the damages awarded to the owners of the McLeod; and the query is whether the statute began to run at the time of the injury to the McLeod or at the date when plaintiff was compelled to pay the judgment in favor of the owners of the McLeod.
It is said that a right to recover nominal damages accrued to plaintiff at the date of the collision, and therefore the statute then began to run. We must be careful to distinguish between a right of action for damages caused to the property of the owners of the Butte and that caused by injury to the McLeod. In the former case, the right of action would accrue at the time of the collision, although all the damages resulting therefrom might not then he apparent. In all cases wherein there is an actual violation of a legal right, or an invasion of the right to property, the right to an action accrues, even though no substantial damage may have been caused. The violation of a legal right is a technical injury, for which nominal damages are recoverable. At the time of the collision a right of action then accrued in favor of the owners of the Butte for all damages caused to their property through the fault of C. S. Weaver & Co., whether such fault was counted on as a breach of contract or as negligence in the nature of a tort, but for damages resulting from such fault, which are not the consequence of injury to the property of the owners of the Butte, but only arise because the owners of the Butte were held liable for the injury to the McLeod, then the right of action for such consequential damages did not arise until the plaintiff was compelled to pay the damages awarded the owners of the McLeod. If the *709 statute began to run when the collision occurred, then the plaintiff could have maintained an action at that time against C. S. Weaver & Co. for at least nominal damages; yet it would not have been possible to frame a declaration based on the facts then existing that would have been good against a demurrer. If the plaintiff had counted on the written contract between Weaver & Co. and the owners of the Butte, it would have appeared that the contract did not deal with the question of injury to property of third parties. There is nothing in the contract which binds Weaver & Co. not to cause injury to the property of others, or by which they agree to be responsible therefor, or to repay any sums which the owners of the Butte might be compelled to pay to third parties. Any duty which Weaver & Co. owed to third parties, or to the owners of the Butte in regard to the property of such third parties, does not grow out of anything found in the written contract, but out of the fact that Weaver & Co. had the possession and control of the steamer when upon their ways, and were therefore subject to the usual obligation imposed by law, to use due care in handling property in their charge, so as not to negligently cause injury to others.
The duty and obligation resting on C. S. Weaver & Co. to so handle the Butte as not to cause injury to the McLeod did not grow out of the execution of the contract with the owners of the Butte, or out of anything therein contained, but out of the fact that Weaver & Co. placed the Butte upon the ways; and the law imposed upon them, with regard to third parties, the duty of exercising due care in the performance of such work.
On the other hand, if the owners of the Butte had brought an action on the ground of negligence against C. S. Weaver & Co., the facts would not have sustained a right of recovery. Negligence alone does not create a right of action. There must be negligence and consequent damage. Railroad Co..v. Standen, 22 Neb. 343, 35 N. W. Rep. 183; Wabash Co. v. Pearson, (Ind. Sup.) 22 N. E. Rep. 134. When the Butte collided with the McLeod, the sinking of the latter did not cause injury to the property or property rights of the owners of the Butte. No ground then existed for awarding damages, substantial or nominal, to the owners of the Butte, as against Weaver & Co., for the sinking of the McLeod. Whether the sinking of the McLeod would ever be a cause of damage to the owners of the Butte depended upon a contingency; that is, upon another event, to wit, whether they would be called upon to make good the damages caused to the McLeod. If they were not so called upon, then the alleged negligence of Weaver & Co., which produced the collision, and destruction of the McLeod, would not cause damage to the owners of the Butte; but, if they were compelled to make good the loss caused by the sinking of the McLeod, then, and not till then, could it be said that the negligence of Weaver & Co. in causing the destruction of the McLeod had resulted in damage to the owners of the Butte. As the collision between the steamers took place on the water within the admiralty jurisdiction, it gave the right to the owners of the McLeod to look primarily to the colliding vessel, or the owners thereof, for the damages *710 caused, regardless of the fact that the latter was under the actual control of Weaver & Co. at the time of the accident. If, however, the owners of the Butte, by reason of their ownership of the colliding vessel, were compelled to make good the damages caused to the McLeod, and resulting from the negligence of C. S. Weaver & Co., then a cause of action in their behalf against Weaver & Co. arose when they were compelled to make good the damages thus caused. The rule applicable to such cases is stated in Wood, Lim. Act. § 179, as follows:
“But where a person or corporation is primarily liable for the negligence or misfeasance or malfeasance of another, the statute does not begin to run upon the remedy of such person or corporation against the person guilty of such negligence or breach of duty until the liability of such person or corporation has been finally fixed and ascertained, because, in the latter case, the gist of the action is the damage, while in the former.it is the negligence or breach of duty.”
The distinction existing between cases based upon a breach of contract or a violation of a legal right and those for the recovery of consequential damages resulting from negligence is clearly pointed out in Wilcox v. Plummer, 4 Pet. 172,—a case greatly relied on to support the ruling made by the trial court. It was an action of assumpsit to recover the loss caused by the negligence of an attorney in failing to sue an indorser upon a promissory note placed in his hands for collection. The question considered by the supreme court was as to the date when the statute of limitations began to run, it being said:
“It is not a case of consequential damages, in the technical acceptation of those terms, such as is the case of Gillon v. Boddington, 1 Car. & P. 541, in which the digging near the plaintiff’s foundation was the cause of the injury, for, in that instance, no right or contract was violated, and by possibility the act might have proved harmless, as it would have been had the wall never fallen. Nor is it analogous to the case of a nuisance. * * * The ground of action here is a contract to act diligently and skillfully, and both the contract and the breach of it admit of a definite assignment of date. "When might the action have been instituted? is the question, for from that time the statute must run. "When the attorney was chargeable with negligence or unskillfulness, his contract was'violated, and the action might have been sustained immediately. Perhaps, in that event, no more than nominal damages may be proved, and no more recovered; but, on the other hand, it is perfectly clear that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict. If so, it is clear the damage is not the cause of action.”
This decision gives us the test that is determinative of questions of the character of that under consideration. If the action is based upon a breach of contract, or for an invasion of some right belonging to the plaintiff, then the cause of fiction accrues when the act is. done which constitutes the breach of contract, or the invasion of the legal right of the plaintiff; and, of course, the statutory limitation begins to run at the date when the right of action accrues, regardless of the question of the amount of damages that may then be recoverable. If, however, the action is not based upon a breach of contract, or upon some act which, when done, is an invasion of some legal right of the plaintiff, but is for *711 the recovery of consequential damages, resulting from the negligence of the defendant, then the right of action does not accrue until actual damage has resulted from the negligence complained of.
In the case at bar, the sinking and destruction of the McLeod was not an invasion of any legal right of the plaintiff. The contract between Weaver & Co. and the owners of the Butte does not deal with the duty of Weaver & Co. towards third parties or their property. The action is not based upon the claim that, through the failure of Weaver & Co. to properly perform their contract obligations, injury was caused to the Butte or any other property or property rights of the owners thereof. Recovery is sought because, through the alleged negligence of Weaver & Co., injury was caused to the owners of the McLeod, for which injury the plaintiff, as one of the owners of the Butte, has been compelled to respond. Reimbursement is sought, not for any injury to the property or property rights of the plaintiff, nor for the breach of any contract with him, but for money he has been compelled to pay to the owners of the McLeod for damages resulting to them from the negligence of Weaver & Co. The right to sue for indemnity foru the money which the plaintiff was compelled to pay did not accrue until payment had been made, and, necessarily, the statute of limitations did not begin to run until the right to sue therefor had accrued. It was therefore error to hold that the statute began to run at the date of the collision causing the destruction of the McLeod, and the judgment must therefore be reversed.
Other questions are discussed in the briefs of counsel which we have not considered, this opinion being strictly limited to the one point of the time when the statute began to run against the right of plaintiff to sue for the money he was compelled to pay to the owners of the McLeod. The judgment below is reversed, at cost of defendant in error, and the case is remanded to the circuit court, with instructions to grant a new trial.

 See 14 Fed. Rep. 483.

 Mem. decision. No opinion.